UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: ____________________

AMY IMBERY,

Plaintiff,

v.

CARNIVAL CORPORATION LTD. d/b/a
CARNIVAL CRUISE LINE,

Defendant.
________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, AMY IMBERY ("Plaintiff"), through undersigned counsel, files suit against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, for damages and alleges:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, AMY IMBERY, is a resident and citizen of Blue Earth, MN and is otherwise sui juris.

2. Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE ("Carnival" or "Defendant"), is a foreign corporation incorporated in Bermuda, with its principal place of business in Miami, Florida. Defendant does business in the State of Florida and, at all times material hereto, was and is doing business in Florida, and regularly conducts substantial and not isolated business in this district.

3. At all material times, Defendant owned, operated, managed, maintained, controlled, crewed, and/or was otherwise responsible for the vessel known as the CARNIVAL

RADIANCE, and operated it on navigable waters.

4. This is an action for damages that exceed Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state. Plaintiff is a citizen of [State]; Defendant is a citizen of Bermuda and Florida. Alternatively, this Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

6. Venue is proper in this district because Defendant maintains its principal place of business in Miami-Dade County, Florida, regularly conducts substantial business within this district, and a substantial part of the events and transactions giving rise to this action are connected to this district. Further, the passenger ticket contract issued by Defendant contains a forum-selection clause requiring that claims of this nature be filed in the United States District Court for the Southern District of Florida, Miami Division, and Plaintiff files suit in this forum because that forum-selection clause compels it, and demands a jury trial in accordance with the savings to suitors clause.

7. All conditions precedent to the filing and maintenance of this action have occurred, have been performed, or have otherwise been waived.

## GENERAL ALLEGATIONS OF FACT

8. On or about February 27, 2026 (the "Incident Date"), Plaintiff, AMY IMBERY, was a fare-paying passenger aboard the CARNIVAL RADIANCE (the "Vessel").

9. At all material times, Plaintiff was a passenger lawfully aboard the Vessel and was

in a location where she was invited and reasonably expected to be.

10. Heavy fog persisted throughout the night before Plaintiff's fall.

11. At about 5:00 a.m. on the Incident Date, Plaintiff went to the Vessel's designated passenger smoking area on Deck 10 (the "subject area"). Defendant invited passengers, including Plaintiff, to use the subject area.

12. The deck in the subject area was wet. The water appeared to have been left by the overnight fog.

13. As soon as Plaintiff entered the subject area, she slipped on the wet deck and fell.

14. No signs, cones, or other warnings alerted passengers that the deck in the subject area was wet.

15. The subject area was dangerous for reasons that include, but are not limited to:

a. The deck was wet with water left by the overnight fog;

b. Defendant allowed the water to remain on the deck in an area where it invited passengers to walk;

c. The flooring became unreasonably slippery when wet;

d. The flooring did not have a sufficient coefficient of friction for an outdoor walking surface exposed to fog; upon information and belief, its coefficient of friction was .41 minimum set by industry standards;

e. The subject area lacked adequate slip-resistant treatment, non-skid coating, or mats; and/or

f. The subject area had no warning signs, cones, or barriers.

16. The foregoing hazardous condition(s) were not open and obvious to Plaintiff, and Plaintiff had no way to assess the degree of slipperiness of the deck in the subject area until after she had already fallen.

17. Defendant, through its employees and agents, selected, installed, and maintained

the flooring in the subject area, which was under Defendant's exclusive control.

18. As a direct and proximate result of the fall, Plaintiff fractured her right wrist. Her contemporaneous medical records state that she slipped on a wet deck on a cruise ship and document the fracture.

## DEFENDANT'S NOTICE

19. Before and at the time of Plaintiff's incident, Defendant knew or should have known of the dangerous conditions described above for reasons that include, but are not limited to:

a. Heavy fog persisted throughout the night before Plaintiff's fall, so the deck in the subject area had been exposed to it for hours before she arrived;

b. Upon information and belief, Defendant's bridge officers monitored and logged the weather throughout the night, including the fog, and so knew of the conditions that left the subject area wet;

c. Defendant designated the subject area as a smoking area and invited passengers to use it, including overnight and in the early morning, so Defendant knew or should have known that passengers would walk on the deck while it was wet;

d. Upon information and belief, Defendant's crewmembers inspected and cleaned the Vessel's outdoor passenger areas, including the subject area, overnight and in the early morning, and through that work Defendant learned or should have learned that the subject area was wet;

e. Upon information and belief, Defendant had surveillance cameras covering the subject area, through which it saw or could have seen the wet deck before Plaintiff fell; and/or

f. Defendant selected and installed the flooring in the subject area and knew or should have known that it became unreasonably slippery when wet, especially in an area exposed to fog without adequate slip-resistant treatment, drainage, or warnings.

20. As a maritime operator that sails its vessels through changing weather, Defendant knew or should have known that heavy fog leaves moisture on a vessel's outdoor surfaces, including its open decks, stairs, and handrails, and makes them wet and slippery. Defendant therefore knew or should have known that the heavy fog on the night before Plaintiff's fall would leave the deck in the subject area wet and create a slipping hazard for passengers.

21. Defendant's crewmember training materials list "Open Decks" first among the "Areas of Most Potential Slips and Falls" on its vessels. A copy of the training slide is attached as Exhibit "A." Defendant therefore knew that open decks such as the subject area are among the places on its vessels where passengers are most likely to slip and fall.

22. Upon information and belief, Defendant trains its crewmembers to place caution signs when floors are wet or being wet-cleaned, which shows that Defendant knew wet floors are a slipping hazard and that passengers must be warned of them. Yet no caution sign was placed in or around the subject area.

23. Upon information and belief, Defendant tests the slip resistance (coefficient of friction) of the flooring on its vessels, including on open decks, and so knew or should have known that the flooring in the subject area became unreasonably slippery when wet.

24. At all material times, Carnival knew or should have known that it was highly probable for passengers such as Plaintiff to be injured by slipping on wet outdoor decks and stairs aboard the Vessel because of earlier incidents aboard the Vessel. The Vessel sailed as the Carnival Victory until Defendant renamed it the Carnival Radiance in 2021. These incidents are substantially similar because each involved a passenger who slipped and fell (1) on an outdoor deck or stairway aboard the Vessel, (2) where water or another liquid was on the surface, or (3) on flooring identical or substantially similar to the flooring in the subject area that became

unreasonably slippery when wet. Examples known to Plaintiff now, apart from others known to Defendant but not

a. On or about July 18, 2019, passenger J.R. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Victory, now the Carnival Radiance. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *J.R. v. Carnival Corp*., Case No. 0:20-cv-61260-RKA (S.D. Fla.).

b. On or about September 21, 2022, passenger S.B. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Radiance. The deck was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *S.B. v. Carnival Corp*., Case No. 1:23-cv-24844-KMW (S.D. Fla.).

c. On or about August 16, 2023, passenger M.G. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Radiance. The deck was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *M.G. v. Carnival Corp*., Case No. 1:23-cv-24161-RKA (S.D. Fla.).

25. At all material times, Carnival also knew or should have known that it was highly probable for passengers such as Plaintiff to be injured by slipping on wet outdoor decks and stairs because of earlier incidents aboard the Vessel's sister ships. The Carnival Radiance (formerly the Carnival Victory), the Carnival Sunrise (formerly the Carnival Triumph), and the Carnival Sunshine (formerly the Carnival Destiny) are sister ships originally built as Destiny-class vessels. Upon information and belief, they were built to substantially similar specifications, with substantially similar open-deck layouts, deck flooring, drainage, and slip-resistant treatments. These incidents are substantially similar because each involved a passenger who slipped and fell

(1) on a wet outdoor deck or stairway aboard a sister ship, or (2) on flooring identical or substantially similar to the flooring in the subject area that became unreasonably slippery when wet. For instance:

a. On or about October 11, 2021, passenger A.P. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Sunrise. The deck was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *A.P. v. Carnival Corp*., Case No. 1:22-cv-23228-PCH (S.D. Fla.).

b. On or about April 15, 2022, passenger E.R. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Sunrise. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *E.R. v. Carnival Corp*., Case No. 1:23-cv-23008-KMM (S.D. Fla.).

c. On or about January 18, 2023, passenger T.N. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Sunshine. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *T.N. v. Carnival Corp*., Case No. 1:23-cv-23125-BB (S.D. Fla.).

d. On or about March 2, 2023, passenger D.O. slipped and fell on a wet exterior deck aboard Defendant's vessel Carnival Sunshine. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See *D.O. v. Carnival Corp*., Case No. 1:24-cv-20773-JEM (S.D. Fla.).

26. At all material times, Carnival knew or should have known that heavy fog leaves the outdoor surfaces of its vessels wet and slippery, and that passengers such as Plaintiff were likely to be injured by slipping on surfaces left wet by fog, because of earlier incidents aboard

other vessels in its fleet. These incidents are substantially similar because each involved a passenger who slipped and fell (1) on an outdoor surface exposed to the weather, (2) in foggy conditions, and (3) where the fog had left the surface wet without adequate warning to passengers. For instance:

a. On or about March 13, 2017, at about 7:00 a.m., in foggy and humid conditions, passenger V.O. slipped and fell on the wet gangway while disembarking Defendant's vessel Carnival Inspiration. That passenger alleged that the gangway was not shielded from foreseeable weather such as morning dew, that no crewmember checked the gangway before passengers disembarked, and that a crewmember warned passengers, "be careful it's wet," only after the fall. See *V.O. v. Carnival Corp*., Case No. 1:18-cv-21348-CMA (S.D. Fla.).

b. On or about the evening of December 24, 2022, passenger M.B. slipped and fell on wet outdoor stairs and their metal strip while descending to Deck 11 aboard Defendant's vessel Carnival Horizon. That passenger alleged that the handrails were wet and that Defendant knew or should have known the stairs were wet because they were exposed to the foggy weather. *See M.B. v. Carnival Corp*., Case No. 1:23-cv-24294 (S.D. Fla.).

27. Carnival also knew or should have known that passengers were at risk of slipping on wet outdoor decks in and around the smoking areas on its vessels because of earlier incidents elsewhere in its fleet. For instance:

a. On or about December 11, 2024, passenger C.C. slipped on what was believed to be water and fell while crossing the outdoor deck on Deck 8, near the smoking section next to the Pig and Anchor, aboard Defendant's vessel Carnival Jubilee. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the exterior deck flooring surface on which Plaintiff slipped and fell. See C.C. v. Carnival Corp., Case No. 1:26-cv-20207 (S.D. Fla.).

28. Defendant was at all relevant times aware of industry safety standards governing walking surfaces, slip resistance, and passenger safety, including those of ASTM International, ANSI, and the International Safety Management ("ISM") Code. See, e.g., IMO MSC Circular 735 (June 24, 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines and ADA Accessibility Guidelines; 46 C.F.R. §§ 72.05-20(n), 116.438(h); ASTM F-1166-07; the Life Safety Code; and the Safety of Life at Sea (SOLAS) Treaty. Industry standards require flooring to maintain a minimum coefficient of friction of .41 under all conditions, including when wet. International law and regulations also require the Vessel to have a Planned Maintenance Management System and a Safety Management System, which require periodic inspections through which Defendant knew or should have known of the dangerous conditions and of its noncompliance with these standards.

## COUNT I – GENERAL NEGLIGENCE

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-eight (28) as though alleged originally herein.

29. At all material times, Defendant owed Plaintiff, a passenger, a duty to exercise reasonable care under the circumstances for Plaintiff's safety.

30. On the Incident Date, Defendant, through its agents, employees, and/or crewmembers, breached its duty to exercise reasonable care under the circumstances through one or more of the following acts and/or omissions:

a. Failing to reasonably inspect the subject area for water during and after the overnight fog;

b. Failing to dry the deck in the subject area within a reasonable time;

c. Failing to close off the subject area until the deck was dry;

d. Failing to place warning signs or cones in or around the subject area;

e. Failing to monitor the subject area overnight and in the early morning, when Defendant knew or should have known that the fog had left the deck wet;

f. Failing to provide adequate slip-resistant treatment, mats, or drainage for a deck exposed to fog;

g. Failing to provide flooring in the subject area with a sufficient coefficient of friction when wet, and failing to test, monitor, and maintain the coefficient of friction of that flooring;

h. Failing to implement and enforce reasonable policies and procedures for the inspection, maintenance, and drying of exterior walking surfaces aboard the Vessel during and after periods of fog or other inclement weather;

i. Failing to reasonably train its crewmembers to inspect, maintain, and remedy dangerous conditions and to warn passengers of the same; and/or

j. Otherwise failing to exercise reasonable care under the circumstances.

31. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

32. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-28, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

33. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of

enjoyment of life, disability, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, AMY IMBERY, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

**COUNT II – NEGLIGENT FAILURE TO WARN**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-eight (28) as though alleged originally herein.

34. At all material times, Defendant owed Plaintiff a duty to exercise reasonable care under the circumstances, including the duty to warn Plaintiff of dangers of which Defendant knew or should have known and which were not open and obvious to Plaintiff.

35. Plaintiff entered the subject area. This is a designated passenger area that Plaintiff was reasonably expected to visit.

36. On the Incident Date, Defendant breached its duty to warn Plaintiff through one or more of the following acts and/or omissions:

a. Failing to warn Plaintiff that the deck in the subject area was wet and unreasonably slippery;

b. Failing to warn Plaintiff that the overnight fog had left the Vessel's outdoor decks, including the subject area, wet;

c. Failing to warn Plaintiff of the extent to which the flooring in the subject

area became unreasonably slippery when wet;

d. Failing to warn Plaintiff that the flooring in the subject area lacked a sufficient coefficient of friction when wet;

e. Failing to warn Plaintiff of earlier slip-and-fall incidents on wet outdoor decks aboard the Vessel and its sister ships;

f. Failing to place warning signs or cones in or around the subject area; and/or

g. Otherwise failing to reasonably warn Plaintiff of the dangerous condition.

37. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

38. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-28, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

39. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, AMY IMBERY, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

**COUNT III – NEGLIGENT FAILURE TO MAINTAIN**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-eight (28) as though alleged originally herein.

40. At all material times, Defendant had a duty to maintain the Vessel, including the subject area, in a reasonably safe condition.

41. On the Incident Date, Defendant breached its duty to maintain the subject area in a reasonably safe condition through one or more of the following acts and/or omissions:

a. Failing to inspect the subject area for water during and after the overnight fog;

b. Failing to regularly test the coefficient of friction of the flooring in the subject area under wet conditions like those Plaintiff encountered;

c. Failing to repair or treat the flooring to maintain a sufficient coefficient of friction;

d. Failing to dry the deck in the subject area;

e. Failing to maintain adequate drainage and slip-resistant treatment in and around the subject area; and/or

f. Failing to adopt and enforce reasonable procedures for drying outdoor decks, including the subject area, during and after fog.

42. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

43. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-28, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

44. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, AMY IMBERY, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT IV – VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) FOR THE NEGLIGENCE OF DEFENDANT'S CREWMEMBERS

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-eight (28) as though alleged originally herein.

45. Upon information and belief, Defendant assigns specific crewmembers, including deck and housekeeping crewmembers working overnight and early-morning shifts, to inspect,

clean, maintain, and/or dry specific areas of the Vessel, including the subject area. These crewmembers are provided a written and/or verbal schedule that depicts what areas of the Vessel they are to maintain during their shift and/or voyage. A limited and identifiable group of crewmembers are assigned to specific areas of the Vessel, including the subject area, and specific crewmembers were assigned to the subject area during the night before and the early morning of the Incident Date.

46. Those crewmembers were Defendant's employees or agents, acting within the course and scope of their employment and in furtherance of Defendant's business.

47. At all material times, Defendant's crewmembers had a duty to exercise reasonable care for Plaintiff's safety, including a duty to inspect and dry the subject area and to warn of dangerous conditions there.

48. On or about the Incident Date, Defendant's crewmembers breached their duty to provide Plaintiff with reasonable care under the circumstances through the following acts and/or omissions:

a. Failing to inspect the subject area for wet and slippery conditions during and after the overnight fog;

b. Failing to dry the deck in the subject area;

c. Failing to report or correct the flooring's insufficient coefficient of friction when wet, including by failing to put down non-skid mats;

d. Failing to close off the subject area until the deck was dry;

e. Failing to place warning signs or cones in or around the subject area; and/or

f. Failing to monitor the subject area.

49. All or some of the above negligent acts and/or omissions by Defendant's crewmembers directly caused and/or contributed to Plaintiff being severely injured and occurred

while the crewmembers were engaged in furtherance of the business of Defendant's Vessel; accordingly, Defendant is vicariously liable for their negligence.

50. Defendant is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. Yusko v. NCL (Bahamas), Ltd., 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case, Defendant's deck personnel's and housekeeping attendants' negligent acts caused Plaintiff's injuries.

51. As a direct and proximate result of the negligence of Defendant's crewmembers, employees, and/or agents, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, AMY IMBERY, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

Dated: October 1, 2026

Respectfully submitted,

By: /s/ *Griffin Sher*
Griffin W. Sher
FBN: 1023219
*Morgan & Morgan, P.A.*
*703 Waterford Way #1000,*
*Miami, FL 33126*
*Phone: (786)450-5829*
*Counsel for the Plaintiff*